SUDDOTH *v*. STATE OF INDIANA.

[No. 30,227. Filed March 25, 1963. Rehearing denied July 2, 1963.]

Robert S. Baker, Public Defender, *Thomas A. Hoadley* and *Sid M. Cleveland,* Deputy Public Defenders, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

MYERS, J.—This is an appeal from a judgment of the Parke Circuit Court denying appellant's petition for writ of error *coram nobis.*

Prior to November 29, 1960, appellant had been charged by affidavit with the crime of robbery. He was arrested, and, on November 29, 1960, was arraigned in the Parke Circuit Court where he pleaded guilty to the charge. On December 15, 1960, he was sentenced to not less than ten years nor more than twenty-five years to the Indiana State Reformatory. On October 30, 1961, he filed his petition for writ of error *coram nobis.* It is based upon the premise that at the time of arraignment appellant's plea of guilty was so inadequate and unintelligent that the court should not have accepted it. The relief sought was that the plea of guilty be set aside and withdrawn. This the court refused to do. The pertinent allegations in the petition read as follows:

"2.

"That on November 29, 1960, the defendant was arraigned and entered a plea of guilty, but informed the court that he was sick. That said plea of guilty was so entered under such conditions

that the court told the defendant, 'I won't accept this plea today. You go back over with the Sheriff and think it over and we will have you out in a day or two. If you want to plead guilty we will take some action. I don't want to accept your plea today. Go back with the Sheriff and we will call you out.'

"3.

"That thereafter, on December 14, 1960, the defendant was again brought before the court for the purpose of continuing the defendant's arraignment that had started on November 29, 1960, at which time the defendant was asked by the court, 'Do you still now want to enter your plea of guilty to this charge?' The defendant answered, 'Judge, I don't even remember doing it or nothing. They say I did so I must have.'

"Upon further questioning the defendant was asked by the court, 'We are now asking you if you want that plea of guilty to still stand?'

"A. 'Yes, I did it, the Sheriff and them said I did, I must have.'

"The court continued the case until the next day, being December 15, 1960.

"4.

"That on December 15, 1960, the defendant again appeared before the court, and after the court asked the defendant his age, the court said, 'I have considered this thing, have been somewhat uncertain about your situation here—don't see but what I should go ahead and sentence you.'

"After further discussion regarding the physical and mental condition of the defendant the court said, 'I will accept the plea of guilty, sentence you to not less than 10 nor more than 25 years.'"

Appellant does not contend that the court failed to fully advise him of his constitutional rights and his right to counsel, but argues that pleading guilty in one breath and then denying knowledge of the crime in another was so inconsistent as to render the plea

unintelligible. In other words, he claims there was a violation of the rule that a guilty plea must be entered into freely and understandingly or there is a denial of due process of law.

It is alleged that this case falls squarely within two decisions previously rendered by this court, to-wit: *Harshman* v. *State* (1953), 232 Ind. 618, 620, 115 N. E. 2d 501, 502, and *Vonderschmidt* v. *State* (1948), 226 Ind. 439, 445, 81 N. E. 2d 782, 784, wherein judgments denying writs of error *coram nobis* were reversed.

In the *Harshman* case, a defendant was arraigned before the trial court on a charge of vehicle taking. He had no attorney and did not desire one. When asked if he was familiar with the charge placed against him, he answered:

"'A. Nothing only what the Prosecuting Attorney has already told me.'"

The charge was explained and the affidavit read to him. Thereupon the court asked him his plea. He said:

"'A. I plead guilty, Sir.'"

The Court next asked him if he had anything further to offer before sentence was passed. He replied:

"'A. I would like to say a few words. I was drinking quite heavy that night. I don't remember taking the vehicle, but there was so much evidence pointing against me, I certainly did take it. I don't remember driving it.'"

On the basis of this record standing alone, this court held the plea should have been rejected and counsel should have been appointed for the defendant.

In the *Vonderschmidt* case, the defendant was arrested on a charge of robbery by violence which allegedly took place on June 6, 1944. He was brought before the court, arraigned, pleaded guilty and was sentenced to the Indiana State Prison. It is to be noted that the robbery, arrest, arraignment, plea of guilty and pronouncement of sentence all took place on the same day. At the hearing on the petition for writ of error *coram nobis,* he testified that he had been drinking heavily for about a week before the date of his arraignment; that his mind was hazy and confused; that he did not remember whether he was in court or not; that some police officer had given him whiskey to drink; that he had no recollection of what the Judge said to him, and that when he got to prison he was treated for alcoholism. There was evidence that he was nervous and shaky in court, and, while not intoxicated, that he had been drinking. A policeman testified that he allowed the defendant to drink some whiskey because his condition was such that the officer thought he needed it.

This court held that to arraign him under those circumstances was a "meaningless ceremony," amounting to a denial of due process.

We do not think that the facts in the case at bar fall within the *caveat* stressed by this court in the two cases cited.

The record reveals that on November 29, 1960, appellant appeared before the Judge of the Parke Circuit Court where the arraignment proceeding was explained to him. The affidavit and the appropriate statute governing the charge against him were read. He was advised of his constitutional rights and asked if he wanted an attorney. He said he did not need

any. When asked again if he wanted an attorney before he entered his plea, he said:

"Well, I did it, could I just plead guilty now."

The court said:

"You can plead guilty if you want to. You want to understand what you are doing. I have read your constitutional rights. If you are ready to plead to it go ahead and plead."

Appellant answered:

"I am guilty."

The court said:

"You want to plead guilty as charged, is that right?"

Appellant answered:

"Yes, I am sick."

At that, the court would not accept his plea that day and sent him back with the Sheriff to "think it over."

On December 14, 1960, appellant appeared in court again, where he was asked if he still wanted to enter a plea of guilty. He answered:

"Judge I don't even remember doing it or nothing. They say I did so I must have."

The court asked him if he wanted the plea of guilty to stand. He answered:

"Yes, I did it, the Sheriff and them said I did, I must have."

He then said he had been having trouble with his head, had a drinking problem, and "everything I do any more is wrong." Then he said:

"I am sorry I did it. It's too late now."

The Judge said he would not accept his plea then, but would continue it a little longer. To which appellant responded:

"I would just as soon go ahead and get it over with Judge."

The next day, being December 15, 1960, he once more appeared before the Judge, who stated to him that he was "uncertain" about appellant's situation, but felt he should go ahead and sentence him; that appellant's physical and mental condition could be treated at the Reformatory. He then accepted appellant's plea of guilty and sentenced him to not less than ten or more than twenty-five years. Appellant then asked:

"I wonder if I could get a flat sentence by the means of pleading guilty?"

He was informed that it could not be done in Indiana. Appellant said:

"I will never get out that way. . . . I thought if I plead guilty I would get straight time."

In the case before us, in addition to the record as above recited, there is other evidence regarding appellant's intelligent understanding of his plea of guilty as developed in the proceedings in error *coram nobis* which is now before us on appeal. After his first appearance in court, appellant was examined by a physician on December 8, 1960, who stated in his report that appellant knew the difference between right and wrong, but had a "don't care" attitude.

The Sheriff of the County signed an affidavit wherein he stated that he did not at any time tell the appellant that he had committed the crime, as as-

serted by appellant, and that after appellant appeared in court on November 29, 1960, he said to the Sheriff:

"I don't know why I do these things but I [did] it and I might as well get it over with."

He freely admitted that he had committed the robbery, that he did not want an attorney, but wanted to plead guilty so that he could get started on his sentence.

The Parke County Probation Officer, in an affidavit, stated she had a converstaion with appellant on November 30, 1960, in which he admitted having committed the robbery and was ready to accept punishment.

The Prosecutor stated, by affidavit, that after the hearing on November 29, 1960, he had talked to appellant about the consequences of his plea, and, in his opinion, appellant clearly understood the consequences of his acts and the penalty thereunder, but that he thought the court could pass a determinate sentence on him.

The transcript of appellant's criminal record was introduced in evidence, which showed that he had been arrested twenty-nine times previously on different charges of misdemeanors and felonies and had been convicted of nineteen between the years of 1955 and 1961. It could be inferred from this that he was not a stranger to arraignment proceedings in criminal courts.

The fact that appellant was in the Parke Circuit Court on three separate dates for the robbery arraignment within a period of seventeen days, had sufficient time to consider his plea and the effect it would have, and there was no evidence that he was intoxicated or under severe mental strain during these appearances in court, distinguishes this case from the

*Vonderschmidt* case, *supra.* The fact that during this period of arraignment he was examined by a physician for his mental condition, confessed his guilt to the Sheriff and Probation Officer, and told the Prosecutor that he understood the effect of a guilty plea, distinguishes this case from the *Harshman* case, *supra.* In that case, this court said as follows (at page 621 of 232 Ind., at page 502 of 115 N. E. 2d):

> "We may add parenthetically that so far as the record before us discloses, no evidence whatever pointing to appellant's guilt was adduced, either before, during or after the entry of the plea."

These affidavits were not contradicted by appellant. Certainly, contrary to the statement in the *Harshman* case, they were some evidence pointing to his guilt at the time of arraignment.

Judgment affirmed.

Achor, Arterburn and Landis, JJ., concur; Jackson, C. J., dissents with opinion.

### Dissenting Opinion

JACKSON, C. J.—It appears to me, from the record, that the circumstances under which appellant's plea of guilty was entered and accepted, were such that even the trial judge had doubts as to the advisability of accepting the same.

At the hearing on the petition for writ of error coram nobis there were admitted in evidence three affidavits, self serving in nature, instead of testimony of the parties making such affidavits. The introduction of the probation officer's report, as such, in my opinion was prejudicial to the rights of the appellant and constitutes error.

I might point out that it is difficult, to say the least, for an inmate of one of the penal institutions to obtain counter-affidavits in cases such as this.

The judgment should be reversed.

NOTE.—Reported in 188 N. E. 2d 825.